UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------ x

CROSS INNOVATIONS, LLC,

Plaintiff,

-against-

HOME4U INC.,

Defendant.

------------------------------------------------ x

MEMORANDUM & ORDER

23-CV-04361 (ENV) (VMS)

VITALIANO, D.J.

In 2023, plaintiff Cross Innovations, LLC ("Cross") commenced the instant action against defendant Home4U, Inc. ("Medical King") for (1) copyright infringement under 17 U.S.C. § 101 *et seq.*; (2) unfair competition and trade dress infringement under 15 U.S.C. § 1125(a); and (3) predatory pricing. *See* First Amended Complaint ("FAC"), Dkt. No. 15. Medical King moves to dismiss Counts II and III, under Fed. R. Civ. P. 12(b)(6). *See* Mot., Dkt. No. 23. For the following reasons, that motion is granted.

## Background[1]

Plaintiff sells medical products, including "LUNDERG Hassle Free Commode Liners" on Amazon.com; the FAC displays images of their packaging and marketing assets. FAC ¶¶ 1-3, 12. On or around April 19, 2023, with knowledge of that product, defendant began to sell what it described as "Hassle Free Commode Liners" on Amazon.com; the FAC likewise displays images of their packaging and marketing assets. *Id.* ¶¶ 5-6. Plaintiff asserts that customers recognize its commode liners by way of their trade dress, which includes, "(1) a three-flap packaging box with

[1] The facts are drawn from the complaint and are read as true, with all reasonable inferences drawn in plaintiff's favor. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

an artist's depiction of a commode chair and bucket, (2) the prominent use of blue-green colors, (3) bicolored packaging surfaces, and (4) specific images shown in a 2 x 2 grid." *Id.* ¶ 29.

According to plaintiff, Medical King is the only competitor selling commode liners with the same four trade dress features. *Id.* ¶¶ 30-31. Plaintiff contends that defendant does so in bad faith, with intent to sow confusion in customers who might then purchase defendant's product in lieu of plaintiff's. *Id.* ¶¶ 35-37. Additionally, plaintiff claims that while Medical King flaunts on its website that it sells the subject product "at or below cost!" it chose that $19.99 price tag to oust competitors from the market while garnering positive product reviews—steps that would fuel defendant's ultimate plan to raise prices and "recoup" its investment. *Id.* ¶¶ 52-54.

This action launched with the filing of the initial complaint on June 13, 2023, *see* Compl., and further refined by the amended, operative complaint on September 18, 2023, *see* FAC. On January 2, 2025, defendant filed this motion, and the related briefing ensued. *See* Mot.; Opp., Dkt. No. 24; Reply, Dkt. No. 25.

## Legal Standard

When reviewing a motion to dismiss brought under Rule 12(b)(6), the court "'must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff.'" *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 163 (E.D.N.Y. 2020). To survive such a motion, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Berk v. Choy*, 607 U.S. 187, 193, 146 S. Ct. 546, 553, 223 L. Ed. 2d 462 (2026) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d

868 (2009) (citing *Twombly*, 550 U.S. at 556). Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

## Discussion

### I. Trade Dress Infringement

To state a trade dress infringement claim under the Lanham Act, a plaintiff must establish that "(1) it has a valid mark that is entitled to protection"; "(2) defendant's actions are likely to cause confusion with [that] mark," *Shandong Shinho Food Indus. Co., Ltd. v. May Flower Int'l*, 521 F. Supp. 3d 222, 247 (2d Cir. 2021), and (3) "the matter sought to be protected is not 'functional,'" *Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 316 (S.D.N.Y. 2001).[2] Trade dress has been expanded to encompass both a product's "packaging, or dressing" and its "design." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S. Ct. 1339, 1342, 146 L. Ed. 2d 182 (2000). Plaintiff claims that its asserted trade dress constitutes product packaging, *see* FAC ¶ 28, which courts in our Circuit refer to as "the manner in which a product was dressed up to go to market with a label, package, display card, and similar packaging elements," *Eliya, Inc. v. Kohl's Corp.*, No. 15-cv-2123, 2016 WL 929266, at *3 (E.D.N.Y. Feb. 22, 2016). And it meets that definition. *See, e.g.*, *Wal-Mart Stores, Inc.*, 529 U.S. at 215. *Cf. Kaufman & Fisher Wish Co., Ltd.*, 184 F. Supp. 2d at 321.

---

[2] To the extent that Count II purports to plead unfair competition, the complaint pleads no facts supporting it. *See* FAC ¶¶ 27-46. Therefore, the purported unfair competition claim is deemed abandoned and dismissed. *See Guarchaj-Guachiac v. Blanche*, 2026 WL 1210065, at *1 (2d Cir. May 1, 2026) ("claims not adequately presented in [brief]" and "failure to make legal or factual arguments constitutes abandonment.") (citation omitted).

Cross has failed to plausibly plead that the asserted trade dress constitutes a "valid mark entitled to protection." *Shandong Shinho Food Indus. Co., Ltd.*, 521 F. Supp. 3d at 249. To do so, a plaintiff must demonstrate that the trade dress is either (1) "inherently distinctive" or (2) "has acquired distinctiveness through a secondary meaning." *Id.* To plead such a claim plausibly, a plaintiff must "articulate the specific elements that comprise" the asserted trade dress and "make clear how they are distinctive." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 554 F. Supp. 3d 606, 615-16 (S.D.N.Y. 2020). "Looking at all its elements and considering the total impression the trade dress gives to the observer," the Court finds that plaintiff's characterization of the asserted trade dress is fatally imprecise, clears neither of the two thresholds, and, therefore, does not survive a motion to dismiss. *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1001 (2d Cir. 1997).

Reviewing the host of descriptive terms Cross uses to advance its claim, there is ample evidence of the pleading shortfall that results in dismissal. The FAC does not establish that the asserted trade dress is "inherently distinctive," namely, that its "intrinsic nature" identifies "a particular source" product. *Wal-Mart Stores, Inc.*, 529 U.S. at 210. *See also* Mot. at 9-15. Rather, the FAC provides only a "laundry list of the elements" supposedly tipping off customers as to the product source but is devoid of any "explanation as to how they are distinctive." *Eliya, Inc. v. Steve Madden, Ltd.*, 749 Fed. App'x 43, 47 (2d Cir. 2018). That generalization is embedded in the fabric of the FAC is signaled by the use of the verb "includes" to introduce the four trade dress elements. FAC ¶ 29. Taking each in turn, a "three-flap packaging box" that depicts a commode chair and bucket, *id.*, does not constitute a primary "indication of origin, such that consumers will readily rely on it to distinguish" this product from others, *Shandong Shinho Food Indus. Co., Ltd.*, 521 F. Supp. 3d at 25. Indeed, this three-flap packaging fits in the category of a "common basic

shape, which is, "as a matter of law, not inherently distinctive." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 382 (2d Cir. 2005).

Cross next attempts to pin its trade dress claim on the packaging's "prominent use of blue-green colors." FAC ¶ 29. But "color is never inherently distinctive" in the trade dress context and may identify a product's source "only when it has attained secondary meaning and has come to be associated in the consuming public's mind with a single source of origin," which this broad-sweeping description does not. *Shandong Shinho Food Indus. Co., Ltd.*, 52 F. Supp. 3d at 257. The third element, "bicolored packaging surfaces," FAC ¶ 29, as pled, is (1) imprecise as to which figure in the FAC it references and (2) inconsistent with the visuals provided in the FAC, which feature a primarily white box with images and text in shades of blue, green, and grey, *see id.* ¶ 3. In any event, this description constitutes a "generalized type of appearance" that is not entitled to the protection of trade dress law. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001).

The final element, namely, "specific images shown in a 2 x 2 grid," FAC ¶ 29, fits neatly in this pattern of imprecision, *see Roberts v. Gallery*, 755 F. Supp. 3d 235, 235 (E.D.N.Y. 2024). Such "vague and conclusory" descriptions of purported trade dress have "doomed" prior such claims brought in courts in this circuit and does so here. *Cardinal Motors, Inc. v. H&H Sports Protection USA, Inc.*, No. 20-cv-07899, 2022 WL 4109721, at *1 (S.D.N.Y. Sept. 8, 2022). Further, plaintiff neither identifies when it first used the asserted trade dress in commerce nor asserts that it was the first to do so. *See Muniz v. Morillo*, No. 06-cv-6570, 2008 WL 4219073, at *5 (S.D.N.Y. Sept. 10, 2008). *See generally* FAC. For these reasons, plaintiff has failed to establish that the asserted trade dress is inherently distinctive.

Nor does the FAC plausibly allege secondary meaning[3] which is obtained when the public understands "the primary significance of a product feature" as "identify[ing] the source of the product rather than the product itself." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012). *See* Mot. at 15-17. Courts consider the following factors in this analysis: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Id.* at 226. In its case, Cross addresses only one factor of this analysis—which contemplates "sales success." *See id.* The FAC asserts that Cross "sells thousands of packages of commode liners each month," FAC ¶ 30, without specifying "how many of the units sold actually bear the trade dress." *Wonderful Co. LLC v. Nut Cravings, Inc.*, No. 21-cv-03960, 2022 WL 4585344, at *3 (S.D.N.Y. Sept. 29, 2022). This conclusory gesture toward factor four and the FAC's silence on the other five factors together "weigh against an inference" that the asserted trade dress has attained secondary meaning. *Id.*

On a different level, plaintiff has failed to plausibly plead non-functionality.[4] "It is a well-established rule that trade dress protection may not be claimed for product features that are functional." *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 181 (2d Cir. 2021). The FAC references the term "functionality" only once in a conclusory fashion, stating, "[p]laintiff's product packaging and marketing assets serve as non-functional and distinctive trade dress that indicates the source of [p]laintiff's products and distinguishes [p]laintiff's products from the products of competitors." FAC ¶ 28.

---

[3] Nowhere does the FAC include the phrase "secondary meaning." *See generally* FAC.

[4] "[E]ven at the motion to dismiss stage, a plaintiff must specifically allege non-functionality." *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20-cv-10469, 2021 WL 1226156, at *9 (S.D.N.Y. Apr. 1, 2021).

Plainly, the "test of aesthetic functionality is whether the recognition of trademark rights would significantly hinder competition." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 170, 115 S. Ct. 1300, 1306, 131 L. Ed. 2d 248 (1995). Here, the packaging of plaintiff's commode liners features an illustration of a commode chair and bucket. FAC ¶ 29. If trade dress protection were extended, competitors would be barred from illustrating these items on their own packaging for commode liners, and competition would be stunted. *See Landscape Forms, Inc. v. Colum. Cascade Co.*, 70 F.3d 251, 253 (2d Cir. 1995). The elements of its trade dress put in issue by plaintiff are therefore, by this standard, functional in nature and do not warrant the requested protection. For these varied reasons, Count II, for trade dress infringement, is dismissed.[5]

## II. Predatory Pricing

To state a prima facie case for predatory pricing under Section 2 of the Sherman Act, *see* 15 U.S.C. § 2, a plaintiff must allege "(1) that the prices complained of are below an appropriate measure of its rival's costs," and (2) that the rival seller had "a dangerous probability[] of recouping its investment in below-cost prices." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 224, 113 S. Ct. 2578, 2581, 125 L. Ed. 168 (1993). Importantly, the Supreme Court "has expressed deep skepticism regarding the viability of proving a predatory pricing scheme," and plaintiff's claim has proven no exception. *Virgin Atl. Airways, Ltd. v. British Airways PLC*, 257 F.3d 256, 266 (2d Cir. 2001).

Indeed, this claim fails on the first element. *See* FAC ¶¶ 47-67. In our Circuit, a plaintiff must plead facts analogous to "what [defendant's] actual costs were" or "standard industry cost" to establish a predatory pricing claim. *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*,

---

[5] Presumably content with its response to plaintiff's other arguments, defendant does not address the likelihood of confusion allegations, *see* Opp. at 6 n.1, and therefore, the Court declines to address them. *See Shandong Shinho Food Indus. Co., Ltd.*, 521 F. Supp. 3d at 252 n. 13.

414 Fed. App'x 334, 336 (2d Cir. 2011). The FAC fails to plausibly plead either. Instead, plaintiff focuses on Medical King's website boast that it "sells products 'at or below cost,'" and that it sold the subject products on Amazon.com for $19.99. FAC ¶¶ 49-50. But the phrase "below cost" sweeps broadly and could refer to "competitor's costs, the prevailing market price, standard industry costs, marginal costs, production costs," among others. Mot. at 19. Defendant neither specifies the type of cost it references nor offers a comparator. By not pleading any such yardstick, plaintiff elides the competitive pricing at the heart of a free market with the predatory pricing that would undermine it. *See id.*

Even assuming, arguendo, that plaintiff met that first requirement, it fails to satisfy the second. *See Brooke Grp. Ltd.*, 509 U.S. at 224. To do so, a plaintiff must establish that a defendant "has a dangerous probability of recouping its losses by increasing its prices once competition in the market is limited." *Id.* (cleaned up). Here, plaintiff has not pled the requisite facts "supporting the inference that [] defendant could obtain enough market power to set higher than competitive prices, and then … sustain those prices long enough to earn in excess profits what [it] earlier gave up in below-cost prices." *Affinity LLC v. GfK Mediamark Rsch. & Intel., LLC*, 547 Fed. App'x 54, 56 (2d Cir. 2013). Rather, plaintiff identifies four products by way of their Amazon.com links and asserts in a conclusory fashion that "[u]pon information and belief, as a result of predatory pricing, Medical King has successfully driven competitors from selling [these]" products. FAC ¶ 57. These allegations fail to provide sufficient support for any of the six factors endorsed by the Second Circuit for assessing the probability of recoupment.[6] *See Affinity LLC v. GfK Mediamark Rsch. &*

---

[6] Courts consider "'(1) the extent and duration of the alleged price discrimination; (2) the relative financial strength of the predator and its intended victim; (3) an estimate of the cost of the alleged predation; (4) an analysis of likely or unlikely entry by new competitors; (5) the predator's capacity to absorb excess market shares; and (6) the structure of the market and whether competitors will

*Intel., Inc.*, No. 12-cv-1782, 2013 WL 1189317, at *5 (S.D.N.Y. Mar. 25, 2013), *aff'd Affinity LLC*, 547 Fed. App'x at 54. For these reasons, Count III is dismissed.

Conclusion

In line with the foregoing, defendant's motion, pursuant to Fed. R. Civ. P. 12(b)(6), is granted, and Counts II and III, for trade dress infringement and predatory pricing, respectively, are dismissed with prejudice. With any other amendment futile, limited leave is granted to replead Count I in a second amended complaint. Should plaintiff elect to do so, its second amended complaint must be filed within twenty days of the entry of this Memorandum and Order on the docket. In the absence of such a filing in that timeframe, the Court will deem Count I abandoned, and it will be dismissed with prejudice, and judgment will be entered.

The parties are otherwise referred to United States Magistrate Judge Vera M. Scanlon for the continued pre-trial management of this case.

So Ordered.

Dated: Brooklyn, New York

September 29, 2026

*/s/ Eric N. Vitaliano*

ERIC N. VITALIANO

United States District Judge

be disciplined enough to raise prices to monopoly levels after the elimination of competition.'" *Affinity LLC*, 2013 WL 1189317, at *5.